IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHEILA RANKIN,                           )
                    Plaintiff,           )
                                         )
        vs.                              )        Civil Action No. 11-331
                                         )        Judge Fischer
STATE FARM MUTUAL AUTOMOBILE             )        Magistrate Judge Mitchell
INSURANCE COMPANY,                       )
                    Defendant.           )

REPORT AND RECOMMENDATION

I.      Recommendation

        It is respectfully recommended that the motion to dismiss and to strike (Docket No. 4)

filed by Defendant, State Farm Mutual Automobile Insurance Company, be granted with respect

to the motion to strike the requests for punitive damages and attorney's fees in Count I and

denied in all other respects.

II.     Report

        Plaintiff, Sheila Rankin, initiated this case by filing a complaint against Defendant, State

Farm Mutual Automobile Insurance Company ("State Farm"), in the Court of Common Pleas of

Indiana County, Pennsylvania.  Plaintiff seeks underinsured motorist ("UIM") benefits under her

policy with State Farm, and she alleges that State Farm has breached its contractual duties and

engaged in bad faith in violation of 42 Pa. C.S. § 8371.  Defendant removed the action to this

Court on the basis of diversity jurisdiction and now moves to dismiss Count II of the complaint

and/or to strike certain demands and allegations in Counts I and II.  For the reasons that follow,

the motion should be granted with respect to the motion to strike the requests for punitive

damages and attorney's fees in Count I and denied in all other respects.

Facts

On September 15, 2007, Plaintiff was involved in a motor vehicle accident and sustained an injury to her left heel. (Compl. ¶¶ 3, 16.)[1] At the time of the accident, she had a State Farm insurance policy that provided UIM coverage. (Compl. ¶¶ 4, 8, 18.)

Plaintiff settled her third-party claim with the tortfeasor for $87,500; State Farm waived subrogation and allowed her to accept the offer. (Compl. ¶ 5.) Plaintiff states that she believed and intended that any and all disputed UIM claims arising under the policy would be resolved by way of arbitration, which would provide a prompt, inexpensive and fair resolution of such claims. (Compl. ¶¶ 10-11.)

On or about June 3, 2010, Plaintiff's counsel advised State Farm of her intent to pursue a UIM claim and State Farm acknowledged this intent and requested that Plaintiff send certain information. (Compl. ¶¶ 12-13.) On June 4, 2010, Plaintiff's counsel made a written request for the limits of the UIM coverage under the policy, namely $200,000.00 ($100,000 stacked times two) to settle her UIM claim and forwarded copies of her medical records to assist in the evaluation of her claim. (Compl. ¶ 14.) Counsel made a written request for the policy limits in January 2011. (Compl. ¶ 15.)

Subsequently, State Farm informed Plaintiff that it would not agree to proceed with arbitration of her UIM claim and that it was enforcing the following policy provision:

> arbitration.. if we and an insured cannot agree on 2) the amount of damages sustained by the injured person, this will determined by arbitration if we and the insured agree to arbitration prior to the expiration of the bodily injury statute of limitations in the state in which the accident occurred.
>
> a. The insured and we must agree to the answers to the following two questions:

---

[1] Notice of Removal (ECF No. 1) Ex. A.

(1) Is the insured legally entitled to recover compensatory damages from the owner or driver of the underinsured motor vehicle?

(2) if the insured and we agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the insured is legally entitled to recover from the owner or driver of the underinsured motor vehicle?

b. If there is no agreement on the answer to either question 1.a. above, then the insured shall:

(1) file a lawsuit, in a state or federal court that has jurisdiction […]

(2) … consent to a jury trial if requested by us;

(Compl. ¶ 18.)[2]

Procedural History

Plaintiff filed this action in the Court of Common Pleas of Indiana County on January 21, 2011 at No. 10114 CD 2011. Count I alleges that State Farm breached its contractual duties by failing to objectively and fairly evaluate her claim and offer her payment of the reasonable and fair value of her UIM claim. Count II alleges that State Farm committed various acts in bad faith in violation of § 8371.

On March 14, 2011, Defendant removed the action to this Court on the basis of diversity jurisdiction, in that Plaintiff is a citizen of Pennsylvania, State Farm is an Illinois corporation with its principal place of business in Bloomington, Illinois, and the amount in controversy exceeds the sum of $75,000.000, exclusive of interest and costs. (Notice of Removal ¶¶ 8-11.) On March 21, 2011, Defendant filed a motion to dismiss and to strike.

Defendant argues that Count II should be dismissed because: 1) it cannot be held liable for bad faith based upon a valuation dispute; and 2) Plaintiff only pleads "labels and

---

[2]     State Farm appears to cite a slightly different version of the policy provision than Plaintiff does (or perhaps a slightly different section), but since neither party has attached a copy of the policy to its submissions, the Court must accept Plaintiff's version for purposes of this motion.

conclusions" but no facts in support of her bad faith claim. In the alternative, Defendant argues that the request for compensatory damages should be stricken from the bad faith claim, as should the allegations that State Farm owed Plaintiff a fiduciary duty in a UIM context (Compl. ¶¶ 24, 27(n)), the allegations regarding State Farm's handling of her claim (Compl. ¶¶ 21-24), and her demand for attorney's fees and punitive damages with respect to her breach of contract claim.

In her response, Plaintiff concedes that punitive damages and attorney's fees are not available for breach of contract claims and that they should be stricken from Count I. (ECF No. 13 at 3.) However, she argues that State Farm acted in bad faith on numerous occasions both prior to and subsequent to the filing of this lawsuit and therefore Count II should not be dismissed. She has not responded to Defendant's other arguments.

<u>Standard of Review for Motion to Dismiss</u>

The Supreme Court has recently stated that:

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v.] Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation. <u>Id.</u>, at 555, 127 S.Ct. 1955 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." <u>Id.</u>, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Id.</u>, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u>, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. <u>Ibid.</u> Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u>, at 557, 127 S.Ct. 1955 (brackets omitted).

4

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Bad Faith Claims

Pennsylvania's bad faith statute provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

> (2) Award punitive damages against the insurer.

> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371. The Pennsylvania Superior Court has held that "the bad faith statute extends to the handling of UIM claims." Brown v. Progressive Ins. Co., 860 A.2d 493, 500 (Pa. Super. 2004) (citing Bonenberger v. Nationwide Mut. Ins. Co., 791 A.2d 378, 381 (Pa. Super. 2002)).

A bad faith claim is distinct from the underlying contractual insurance claims from which the dispute arose. Nealy v. State Farm Mut. Auto. Ins. Co., 695 A.2d 790, 792 (Pa. Super. 1997), appeal denied, 717 A.2d 1028 (Pa. 1998). The Court of Appeals for the Third Circuit has recognized that "bad faith is actionable regardless of whether it occurs before, during or after litigation.... [Moreover], using litigation in a bad faith effort to evade a duty owed under a policy would be actionable under Section 8371." W.V. Realty, Inc. v. Northern Ins. Co., 334 F.3d 306, 313 (3d Cir. 2003) (citing O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906, 908 (Pa. Super. 1999)).

The Pennsylvania Superior Court has stated that:

> To prove bad faith, a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in

denying the claim. <u>Terletsky v. Prudential Property and Casualty Insurance Company</u>, 437 Pa. Super. 108, 649 A.2d, 680, 688 (1999). Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured. <u>Williams v. Nationwide Mutual Ins. Co.</u>, 750 A.2d 881, 887 (Pa. Super. 2000).

<u>Condio v. Erie Ins. Exchange</u>, 899 A.2d 1136, 1143 (Pa. Super.), <u>appeal denied</u>, 912 A.2d 838

(Pa. 2006). In that case, the court examined the question of the application of § 8371 to UIM and

uninsured motorists benefit claims (together, "U-claims"):

> Pennsylvania law holds insurers to a duty of good faith and fair dealing toward their insureds, <u>O'Donnell</u>, 734 A.2d at 905; <u>Bonenberger</u>, 791 A.2d at 381, without distinguishing between first party and third party settings…. U-claims contain elements of both first party and third party claims. We see no reason, therefore, to impose a different duty on an insurance company in a U-claim setting. While the legal relationship of the parties may change in the context of a U-claim, <u>i.e.</u>, become adversarial, the insurer's duty does not change. We hold that, when faced with a U-claim, an insurance company's duty to its insured is one of good faith and fair dealing. It goes without saying that this duty does not allow an insurer to protect its own interests at the expense of its insured's interests. Nor does it require an insurer to sacrifice its own interests by blindly paying each and every claim submitted by an insured in order to avoid a bad faith lawsuit.

<u>Id.</u> at 1144-45.

State Farm argues that Plaintiff is attempting to impose on it the duty to "blindly pay" her

claim despite the holding of the <u>Condio</u> case. However, Plaintiff responds that numerous cases

have recognized that when insurance companies make "low-ball" offers of settlement and

particularly when they increase their offers with no intervening new information, they commit

acts which could be deemed bad faith.

Plaintiff cites <u>Barry v. Ohio Casualty Group</u>, 2007 WL 128878 (W.D. Pa. Jan. 12, 2007).

In that case, Judge Gibson stated that:

> Generally speaking, Pennsylvania law does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses. <u>Brown</u>, 860 A.2d at 501. Nevertheless, low-ball offers which bear no reasonable relationship to an insured's actual losses can constitute bad faith within the meaning of § 8371. <u>Id.</u> The dispositive question is whether a reasonable jury could conclude, on the basis

of clear and convincing evidence, that the Defendant acted in bad faith by offering to settle Barry's case for significantly less than the amount of her actual losses.

In the case sub judice, Barry has presented evidence that the increase in the offer, which went from $6,000.00 to $25,000.00 in a two-week period, occurred in the absence of any additional evidence. Both Halferty and Osborne testified that this increase was not due to any particular discovery of new information. Halferty testified that the figures were based on an estimation, and that there was no documentation available. He also testified that the Defendant made an initial offer of $6,000.00, which was below the lowest figure in the Colossus value range. He further explained that the Defendant typically made offers at the lower end of the range for purposes of beginning settlement negotiations. Based upon this evidence, the Court is convinced that a reasonable jury could conclude, on the basis of clear and convincing evidence, that the Defendant acted in bad faith with respect to its offering Barry unreasonably low offers during the negotiations to settle her UIM claim.

Id. at *8 (record citations omitted).  See also Wisinski v. American Commerce Group, Inc., 2011 WL 13744, at *16-17 (W.D. Pa. Jan. 4, 2011) (Cohill, J.) (criticizing insurer for making initial low ball settlement offers of $7,798 and $9,000, then, when arbitration was imminent, but with no new information, raising the offer to the policy limit of $100,000).

In this case, Plaintiff notes, State Farm made an initial offer of settlement of $40,000 on January 7, 2011 and then, just 19 days later on January 26, 2011, with no new information, State Farm raised the settlement offer to $100,000.  (ECF No. 13 Exs. 2, 3.)  Plaintiff also states that she is unaware of any evaluation done by State Farm prior to making an offer in this case and that, if State Farm evaluated the claim in excess of $300,000 (allowing for $200,000 for UIM) and made offers of only $40,000 and $100,000, this could also constitute evidence of bad faith conduct.

With no further record developed in this case, the Court cannot determine whether State Farm's widely disparate settlement offers in close proximity to one another with no additional information permit Plaintiff to state a claim for bad faith in violation of § 8371.  In addition, as Plaintiff notes, with no record of any evaluation done by State Farm, no determination can yet be

made as to whether its offer of settlement was made in good faith.

State Farm also argues that Plaintiff makes only "bare-bones" conclusory allegations of bad faith and that, pursuant to <u>Twombly</u> and <u>Iqbal</u>, such allegations are no longer sufficient to survive a motion to dismiss. It cites <u>Atiyeh v. National Fire Insurance Co. of Hartford</u>, 742 F. Supp. 2d 591 (E.D. Pa. 2010), in which the court granted a motion to dismiss the claim brought by the plaintiff, who had an insurance policy with National Fire and suffered a loss from water damage that National Fire refused to pay. The plaintiff's allegations consisted of the following: 1) he entered into an insurance contract with National Fire, suffered a loss from water damage, paid all premiums and maintained the premises; but 2) National Fire falsely and fraudulently represented that he had not performed routine maintenance, unreasonably refused to indemnify him for his loss; and 3) National Fire breached its duty of good faith and fair dealing by failing to conduct a reasonable investigation, denying benefits without a reasonable basis, knowingly or recklessly disregarding the lack of a reasonable basis to deny the claim, or asserting policy defenses without a reasonable basis. The court held that these were "merely conclusory legal statements and not factual averments." <u>Id.</u> at 599. <u>See also</u> <u>Eley v. State Farm Ins. Co.</u>, 2011 WL 294031, at *4 (E.D. Pa. Jan. 31, 2011) (relying upon <u>Atiyeh</u> and dismissing bad faith claim based on allegations that State Farm failed to negotiate plaintiff's UIM claim in good faith, failed to properly investigate and "such other acts as to be shown through discovery.")

In this case, however, in addition to the information noted above, Plaintiff also cites the fact that State Farm refused to tender its policy limits even after the doctor it chose to perform a medical exam opined in a written report that her injuries are permanent. (Compl. ¶ 27(g).) In a report dated December 6, 2010, Jeffrey N. Kann, M.D. stated that Plaintiff has "mild post-traumatic arthritis left foot subtalar joint," that this diagnosis is "causally related to the motor

vehicle accident of September 15, 2007," that her "clinical and radiographic examinations do correlate well with her subjective complaints," that she "does have some functional residual disability" including "decreased motion of her left subtalar joint compared to her right subtalar joint" and "a difficult time walking on uneven surfaces" which "conditions will be permanent in nature," and that:

> In my opinion, Sheila Rankin has not recovered from the injury which she sustained on September 15, 2007. She has obtained a state of maximum medical improvement with respect to the injury of September 15, 2007.

(ECF No. 13 Ex. 1 at 2, 3.)

The allegations of Plaintiff's complaint advance this case beyond the "bare bones" allegations of the cases cited by State Farm. Therefore, the motion to dismiss Count II should be denied.

<u>Motion to Strike</u>

In the alternative, Defendant moves to strike: 1) the request for compensatory damages from Count II, 2) the allegations asserting that State Farm owed her a fiduciary duty; and 3) the allegations regarding how State Farm handled her claim from Count I. These arguments are unavailing.

Rule 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "While courts possess considerable discretion in weighing Rule 12(f) motions, such motions are not favored and will generally be denied unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party." <u>Miller v. Group Voyagers, Inc.</u>, 912 F. Supp. 164, 168 (E.D. Pa. 1996) (citations omitted). <u>See also</u> <u>Lakits v. York</u>, 258 F. Supp. 2d 401, 409 (E.D. Pa. 2003).

State Farm cites <u>The Birth Center v. St. Paul Companies, Inc.</u>, 787 A.2d 376 (Pa. 2001).,
to support the proposition that the bad faith statute does not allow for the awarding of
compensatory damages  However, in that case, the Pennsylvania Supreme Court explicitly held
that § 8371 does not prohibit the award of compensatory damages.  "It merely provides an
additional remedy and authorizes the award of additional damages."  <u>Id.</u> at 386.

State Farm argues that an insurer is not a "fiduciary" of an insured in a bad faith claim
arising in a UIM context.  However, the Superior Court has stated that "the duty of an insurer to
act in good faith arises because the insurance company assumes a fiduciary status by virtue of the
policy's provisions which give the insurer the right to handle claims and control settlement."
<u>Brown</u>, 860 A.2d at 500 (citation omitted).  Although the court held in <u>Condio</u> that insurers do
not have a *heightened* duty in UIM claims, it recognized that they have a duty to act in good faith
and that this duty "does not change" when the proceedings become adversarial.  Some of the
statements of various Superior Court opinions are not readily reconcilable.  In any event, State
Farm has not demonstrated that it will suffer prejudice from Plaintiff's allegation that it owed her
a fiduciary duty to act in good faith in handling her UIM claim.

Finally, State Farm argues that Plaintiff's allegations about its handling of her claim
should be stricken from Count I because they are "impertinent" to the issue of the amount of
damages Plaintiff may be entitled to recover from the tortfeasor.  State Farm has cited no
authority on this point and it is not necessary to strike these allegations.  As noted above,
motions to strike are not favored.

For these reasons, it is recommended that the motion to dismiss and/or to strike, filed by
Defendant, be granted with respect to the motion to strike the requests for punitive damages and
attorney's fees in Count I and denied in all other respects.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within the time specified in the Notice of Electronic Filing. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: April 27, 2011